Eollett, J.
The parties desire “ the true construction of the lease from the plaintiffs to the defendant,” as to one matter only ; what rent shall now be paid to plaintiffs for the part of the railroad from Springfield to Dayton?
*311 The corporate existence of the parties is admitted, and their competency to make the lease is not questioned. There is no claim, by either party, that there was any mistake or fraud on the part of anyone; and neither party asks for any reformation or change of any part of the lease. There does not seem to be any substantial dispute between the parties as to the legal principles that govern the construction of the lease; and all agree that the per cent to to be paid is 33-J- per cent. But they dispute as to the basis on which to compute the amount of rent to be paid.
Is such basis the entire gross earnings and receipts of all the property and railroads owned and leased by the plaintiffs, including the part from Springfield to Dayton? This is the claim of plaintiffs; and the defendant admits that such basis would be correct if the defendant controlled and operated the entire line of railroad, and that such a basis will be correct when the prior lease is ended and the defendant comes into possession of the part from Springfield to Dayton. The defendant claims that the correct basis now should not include the gross earnings and receipts of the part of the railroad from Springfield to Dayton, but only the 85 per cent rents received by the defendant from the company operating that part.
The dispute is shown as follows: During a certain time the gross earnings and receipts of that part of the road are $300,000, of which 35 per cent ($105,000) as rent is paid to the defendant. Plaintiffs claim that the 33J per cent of the $300,000, which is $100,000, should be paid to them; but defendant claims it should pay only 33J- per cent of the $105,000 rent received by it, which is $35,000, making a difference to each party of $65,000 for each $300,000 of such gross earnings and receipts. An examination of this lease of March 8,1881, shows that the defendant agreed to “payas rental for the aforenamed granted and demised railroads and appurtenances, thirty-three and one-third per centum of the total gross earnings and receipts of said granted and demised railroads and property.’" And the lease provides that, “said gross earn *312 ings and receipts are to be determined from the entire gross earnings and receipts from all sources whatsoever, or however derived, of the railroads and property hereby leased, or any portion thereof.”
The railroads and property thus leased are generally described by the lease as “the entire railroads of the said parties of the first part, lying in and extending from the city of Sandusky, in Erie county, to the city of Dayton, in Montgomery county; and from the town of Cary, in Wyandot county, to the town of Eindlay, in Hancock county; and from the city of Columbus, in Eranklin county, to the city of Springfield, in Clarke county, all in the state of Ohio; now constructed, or which shall hereafter be constructed, as provided in this agreement.” There follows the above a more minute description of the property leased.
The following plat will convey some idea of its location:

*313 The part of the railroad from Springfield to Dayton is expressly included in the part extending from Sandusky to. Dayton. And it is not claimed that this part is included by mistake, or that the lease anywhere excludes such part. This language is plain and specific, and includes the entire line of railroads, and provides that the “gross earnings and receipts” of the entire line shall be the basis for computing the rent. We need not add to the principles of construction as gathered and stated in Lawler v. Burt, 7 Ohio St. 340, 349. It is claimed that certain facts as to the property, and certain words and covenants of the leases, require this language to express a meaning other than the words seem to import; and that the words “ gross earnings” apply to the part of the property not included in the prior lease, and the word “receipts” to the part in the prior lease.
To have such effect, the other meaning must clearly appear to be intended.
It is stated that the plaintiffs did not put the defendant into immediate possession and control of every part of the railroad.
It may be answered at once, that the defendant agreed with plaintiffs that it should not have such possession and control, and yet the parties used this language as to the basis of rent. "When this lease was made all the parties knew that the prior lease 'of November 28, 1870, was in successful operation; and that the lessee had assigned that lease to the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, an efficient and responsible company; and that the lease was of great value to the lessor. These parties also inserted the following provision in their lease: “And whereas, the said Cincinnati, Sandusky and Cleveland Railroad Company has heretofore leased the portion of its road between Springfield, in Clarke county, and Dayton, in Montgomery county, the said party of the second part assumes such lease and all existing contracts and agreements of said parties of the first part.” The context shows the intended meaning of the word “ assumes.” The par *314 ties use it in its original meaning, not in its acquired, meaning. The defendant assumed such lease; it thus took to itself — accepted—the obligations, the contracts, and agreements, and the benefits of the lessor in that prior lease. These parties agreed that their lease was made having regard to the provisions of the prior lease. The obligations or the benefits of the prior lessee are not assumed; such obligations remain upon the party that agreed to fulfill them, and such party must now perform them for the benefit of the defendant.
The situation of the defendant is very similar to what it would be had the plaintiffs and defendant made their lease first, and after that the defendant had made the assumed lease with the company now operating that part of the road. Had this been done, no question could arise as to the basis for computing the rent due plaintiffs on their lease with the defendant; the plain language of the lease states a basis. The defendant, when it obtained these leases from plaintiffs, 'was seeking to extend its line of railroad from Pekin, in the state of Illinois, through Indiana, and to Springfield, Ohio; and it leased plaintiffs ’ property “ so as to form a continuous line for the passage of cars, and thereby to increase its facilities for doing ah east and west bound business, and to render more profitable the large amount of freight and passenger business it expects to bring to said Springfield.”
The defendant took immediate possession of plaintiffs’ roads east and north of Springfield, and made them parts of its extended system of railroads east and west and north. By the provisions of the lease assumed the part of the road from Springfield to Dayton had become part of a trunk road from the city of Cincinnati, by way of Dayton and Springfield, to Cleveland, Sandusky, and Columbus. The defendant thus acquired the benefits of a connection with, and interest in, a system of railroads extending south; and the value of such benefits need not be discussed. Thus it is conclusive that, by the provision, “ the said party of the second part assumes such lease and all existing contracts *315 and agreements of said party of the first part,” the defendant did not simply take the obligations of the lease assumed, but it did obtain the great benefits secured to the lessor therein. The defendant obtained these valuable benefits which it sought to secure, and all the control and possession it purchased and agreed for, with power to take full and entire possession and control of the remaining part whenever there is a failure to fulfill the covenants of the prior lease. And we see no reason why the true construction of this lease does not depend upon the words the parties have used in the lease.
The defendant agreed to pay “thirty-three and one-third per centnm of the total gross'earnings and receipts of said granted and demised railroads and property.” And the lease describes the entire railroads and property. What are gross earnings and receipts ? Surely they are not net earnings and receipts. It has been earnestly contended that the word “receipts” expresses something separate from earnings, and was intended to include only the thirty-five per cent rent paid under the prior lease. But the parties have not so expressed it in the lease; and, on final argument, the defendant admitted that, as the parties had used the words “gross earnings and receipts,” these words may be taken together as expressing the same thing, unless other parts of the agreement require a different construction. We think this is the correct rule, especially to bind the defendant in its promises.
No other words of this lease can require such a separation and limitation of meaning. There are no provisions that the rent shall be gross earnings and receipts only of the parts operated by the defendant, and different for the parts not so operated. No one could claim such a result would follow should the defendant sub-lease the parts it now operates.
It is claimed “ that in several places where the words demise and grant are used they are evidently used in a restricted sense, and apply to the parts of the roads not before leased; ” and so “ gross earnings ” apply to all income *316 except the rent from the part from Springfield to Dayton, and this rent was called “ receipts.” But it is not claimed that the words “ demise ” and “grant ” were only so used in a restricted sense. And if the words “demise and grant ” did not convey the entire line of railroads, including the part from Springfield to Dayton, whát becomes of the defendant’s admitted right to the possession and control of that part of the road when the prior lease shall be ended ? The lease provides that the “ gross earnings and receipts” are from the property and railroads “ demised and granted ” in the lease; and the language applies these words to the entire line.
We are asked to compare the provisions of the two leases, to find that the meaning of the word “ receipts” is limited to the thirty-five per centum rent paid to the defendant. It must be conceded that the words “gross earnings and receipts, ” in the prior lease where no rents are received are used together and used to- express one thing only. In that lease there are no receipts aside from the gross earnings, yet the parties there use the words “ gross earnings and receipts ” as the basis for computing rent. And these parties must admit they are so rightly us'ed. We are asked to look at the covenants “ as to keeping the accounts of the gross earnings and receipts, and the time of the payment of the rental,” to aid in separating the word “ receipts ” from “ gross earnings and receipts.” In one case the original lessee or assigns must keep the accounts and render a semi-annual statement; in this Jease the defendant must keep the accounts; and every quarter the defendant must render an accurate detailed account. The original lessee need not render an account only each six months, but the account must show the quarterly business, as payments are required quarterly. So far as appears such accounts show the monthly business; and whether they do so or not, the defendanthas agreed to render quarterly statements, and no one asserts it is not able to do so. So far there is no complaint before us that each party has not known the amount of gross earnings and receipts of each quarter. The exact amount of the first quarter, and the amount of the second quarter, seem to be well known.
*317 As to times of payments, in this lease it is $25,000 each month; and the quarterly remaindermust he paid on the first days of January, April, July,and October, and thirty days grace is allowed. In the prior lease the time is within thirty days after the last days of December, March, June, and September. The qnai-ters end substantially at the same time.
Again, it is claimed, the defendant’s covenant to renew the tracks of the roads leased “ with steel rails of not less than fifty-six pounds to the linear yard,” could apply only to the roads in the possession and control of the defendant, as the defendant could not repair the road, and as no such provision is in the prior lease. But this claim overlooks a more important provision of each lease. In the prior lease the lessee covenants “in general that it will maintain said railroad in such condition and that it will operate the same and furnish such machinery, cars, equipments, stations, and other appurtenances as are suited and required by a railroad of the best description.”
In this lease the lessee covenants that it will “ furnish such equipments, stations, aud other appurtenances therefor, as are suited for and required by a railroad of the best class.” All agree that steel rails are now “ suited and required by a railroad of the best description,” and so the prior lease provides for such rails; and, in the future, rails of a quality much better than steel may be “ suited for and required by a railroad of the best class.” And when required they must be furnished under the prior lease, or the defendant, by virtue of the prior lease, may take possession of that part of the railroad and hold it under his lease with plaintiffs.
Thus the defendant has the power to fulfill every one of its covenants in this lease, as and when applied to the entire line of railroads,, either by its own acts or by compelling another to act.
Whether or not either of these agreements is profitable is not before us. It does not appear that either one is not profitable.
We find nothing in either lease that requires the wmrd *318 “ receipts ” to be applied only to the thirty-five per cent rent paid under the prior lease to the defendant, or that should separate it from the expression “gross earnings and receipts,” as used and applied throughout both leases.
The parties here made but one lease. ' The defendant entered into its plain and specific covenants, knowing and accepting the provisions of the prior lease, with plaintiffs’ consent. The agreement to pay, as rent, thirty-three and one-third per centum of the total gross earnings and receipts of the granted' and demised railroads and property is definite and distinct, and its meaning is not changed or limited by any words or covenant of either lease, or by any fact shown.
The plaintiffs were entitled to judgment as prayed for.

Judgment reversed, and judgment for plaintiffs.